67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gerald E. SELMAN, Plaintiff-Appellant,
v.
Shirley S. CHATER,** Commissioner, Social
Security Administration, Defendant-Appellee.
 No. 94-35513.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 14, 1995.*
Decided Sept. 26, 1995.
 
 1
 Before: ALARCON, CANBY, Circuit Judges, and FITZGERALD***, District Judge.
 
 
 2
 MEMORANDUM****
 
 
 3
 Gerald E. Selman appealed to the District Court the decision of the Secretary of Health and Human Services denying his application for Social Security Disability Benefits and supplemental security income benefits. The district court affirmed the Administrative Law Judge's ("ALJ") determination that the decision of denial by the Secretary was supported by substantial evidence and was legally proper. Selman appeals, contending the ALJ erred by 1) improperly finding that Selman is not disabled based on his residual capacity to perform sedentary work; 2) improperly rejecting his claims of disabling pain; 3) improperly disregarding the opinions of Selman's treating physicians; and 4) failing to properly consider post-hearing evidence. Because we conclude the ALJ did not err in denying Selman disability benefits, we affirm the district court order denying Selman benefits.
 
 FACTS
 
 4
 Selman was involved in a motorcycle accident on August 30, 1991, which resulted in the amputation of his left leg nine inches below his knee. He has not worked since the accident.
 
 
 5
 In this case, the ALJ determined that Selman was physically unable to perform his previous work, but nonetheless concluded that Selman was not disabled because he retained the residual functional capacity to perform a significant number of sedentary jobs. The ALJ reached this conclusion by relying on the opinion of a vocational expert who testified that while Selman could not return to his previous jobs, he could perform sedentary jobs such as motor vehicle dispatcher and log/assignment clerk, which were semi-skilled, and for which he had transferrable skills.
 
 
 6
 Selman's primary treating physician was Dr. Gary Hunter, an osteopath specializing in orthopedics. Dr. Hunter completed several physical evaluation forms for Washington state's Department of Social & Health Services for the receipt of state benefits. On each form Dr. Hunter indicated that Selman "could perform on a normal day to day work basis, based on objective findings and [his] professional opinion."[1]
 
 
 7
 In January, 1993, Selman was examined by Dr. Hunter and Dr. Neal Shonnard, an orthopedic surgeon, after complaints of stump pain and lower back pain. Both doctors agreed that the back pain was due to postural changes caused by the amputation and that revision surgery may be necessary to remove sharp edges on the amputated bone. This surgery was conducted in March, 1993, after the hearing before the ALJ in December, 1992. The evidence of Selman's revision surgery was before the Appeals Council which did not find anything therein warranting a change in the ALJ's opinion.
 
 
 8
 At the hearing before the ALJ, Selman testified that he still experienced pain from the amputation. He testified that he could sit for two or three hours, but then needed to lie down to massage his stump. He further testified that he could walk 50 to 60 feet without using his cane or 70-80 feet with his cane and that he was able to wear his prosthesis for up to six hours at a time. Selman was not taking prescription pain medication at the time of the hearing but did take Advil. Selman lived with his mother and tried to help with light work around the house. He testified that he socialized with friends, went fishing in a boat for several hours, and played cards for as long as two hours at a time.
 
 
 9
 Selman's mother testified at the hearing that he helped around the house for three to four hours at a time and could carry a light grocery bag. A friend testified that he played cards, Ninetendo, and had gone fishing with Selman for as long as two to four hours.
 
 STANDARD OF REVIEW
 
 10
 We review de novo the district court's decision upholding the Secretary's denial of benefits. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.1995). We "will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." Id.
 
 DISCUSSION
 
 11
 A claimant is disabled if any medically determinable physical or mental impairment prevents him from in engaging in substantial gainful activity. See 42 U.S.C. Sec. 423(d)(1)(A). The claimant may establish a prima facie case of disability by showing his impairment prohibits him from doing his previous job. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.1992). The burden then shifts to the Secretary to show the claimant could engage in other types of gainful employment that exist in the national economy. Id.
 
 
 12
 "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g). In determining whether substantial evidence supports the decision of the ALJ, we review the administrative record as a whole and weigh both the evidence that supports and that which detracts from the ALJ's conclusion. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995) (citation omitted).
 
 
 13
 Selman contends that "there is no substantial evidence to support the Secretary's denial of disability benefits." We agree with the Secretary, the ALJ, and the District Court that substantial evidence exists to support a denial of disability benefits.
 
 
 14
 Dr. Hunter, Selman's treating physician, consistently and repeatedly certified to the state of Washington that Selman was capable of sedentary level work. This court gives special weight to the opinion of the treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). Dr. Hunter's opinions are supported by all other medical evidence of record, e.g., the notes and letter from the prosthetist, Melissa Gavigan, and the report provided by consulting orthopedist Dr. Shonnard. Dr. Shonnard found no neurological abnormality, "entirely normal" lumbar flexibility, and an "excellent" range of motion in Selman's stump. With regard to the lower back pain, Dr. Shonnard recommended aerobic conditioning and abdominal strengthening. In sum, these reports further support the consistent opinions of the treating physician and collectively provide substantial evidence that Selman, while disabled, could perform some sedentary work.
 
 1. Excess Pain
 
 15
 "If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that [he] experiences pain at a higher level (hereinafter referred to as the claimant's 'excess pain'), the Secretary is free to decide to disbelieve that testimony, but must make specific findings justifying that decision." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986) (citations omitted). These findings must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir.1991) (internal quotations omitted).
 
 
 16
 Factors the ALJ must consider in determining the credibility of the claimant's testimony are listed in Social Security Ruling ("SSR") 88-13:
 
 
 17
 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
 
 
 18
 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
 
 
 19
 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
 
 
 20
 4. Treatment, other than medication, for relief of pain;
 
 5. Functional restrictions; and
 
 21
 6. The claimant's daily activities.
 
 
 22
 SSR 88-13, quoted in Bunnell, 947 F.2d at 346.
 
 
 23
 Here, the medical evidence is sufficient to establish that Selman suffers from some level of pain related to his accident in 1991 and the subsequent amputation of his left leg nine inches below the knee. In his findings, the ALJ noted Selman's complaints and considered the testimony of his mother and friend before concluding that:
 
 
 24
 His ability to sit in low slung seats in a fishing boat for up to four hours, help his mother around the house for three to four hours, and play cards for up to four hours at a time supports the conclusion that he can engage in sedentary work activity.
 
 
 25
 These findings by the ALJ are consistent with the medical reports prepared by Selman's treating physician and the testimony of the vocational expert. The ALJ also noted that Selman's use of prescribed pain medication was on a temporary basis only. We find that the ALJ was sufficiently specific in his analysis of Selman's pain complaints and did not "arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 at 345-46 (citation omitted).
 
 2. Lay testimony
 
 26
 In a related approach, Selman contends that the ALJ "erred in rejecting [the] lay testimony" of his mother and friend (Mr. Stanton). Actually, the ALJ summarized their testimony and found it more credible than Selman's.
 
 
 27
 In concluding that the claimant's subjective complaints are not entirely credible, ... I have considered the testimony of his mother and Mr. Stanton. I note that their testimony suggests greater capabilities than the claimant described. For example, Mrs. Bishop stated that the claimant was able to help around the house for three or four hours before he needed to lie down, and Mr. Stanton stated that he could sit for up to four hours before needing to lie down. In contrast, the claimant testified that his limit was two to three hours....
 
 
 28
 The ALJ did not ignore this lay testimony, but in fact, relied upon it. Therefore, we do not find error.
 
 3. Medical-Vocational Guidelines
 
 29
 Selman contends that the ALJ committed error in improperly relying upon the Medical-Vocational Guidelines, when making a finding that Selman could perform some job in the national labor market. Selman claims that the guidelines were inappropriate because of his inability to perform sedentary work. The ALJ, however, found that Selman did have the ability to perform some sedentary work and therefore the use of the guidelines was appropriate.
 
 
 30
 4. Hypothetical question to the vocational expert
 
 
 31
 Selman argues alternatively that the ALJ's hypothetical to the vocational expert was insufficient and thereby constituted error. The ALJ asked the vocational expert about a scenario in which an individual could perform sedentary work but could only stand for approximately one hour and sit for six hours, but not continuously. The vocational expert responded that such an individual could perform the sedentary jobs of motor vehicle dispatcher and log/assignment clerk, cashier, telephone solicitor, and surveillance system monitor. When further asked to consider sedentary exertion with the need to change positions, the vocational expert answered that the jobs identified did allow a stand or sit option. We have previously held that the limitation of evidence in a hypothetical question is objectionable "only if the assumed facts could not be supported by the record." Magallanes, 881 F.2d at 773. These factors considered by the vocational expert in the hypothetical were supported by substantial evidence in the record and are not error.
 
 
 32
 5. Disregard of the treating physician's opinions
 
 
 33
 Selman claims that the ALJ erred in disregarding the opinion of his treating physician, Dr. Hunter. The record, however, clearly indicates that the ALJ accepted and relied upon Dr. Hunter's certification that Selman was capable of performing sedentary work activity. This does not constitute a rejection of the treating physician opinion.
 
 6. Consideration of post-hearing evidence
 
 34
 Selman's final main contention is that the district court failed to properly consider post-hearing evidence. Selman argues that a remand is warranted because of evidence which was provided to the Appeals Council, after the ALJ hearing, was not adequately considered. This evidence included the psychological report from Nancy King, Ph.D., dated April 1993, and included in the administrative transcript. The record establishes that the Appeals Council did consider this evidence and sent two separate letters to Selman's attorney explaining why it did not provide a basis for reversing the ALJ's decision. In another letter to Selman's attorney, the Appeals Council explained that it considered the post-hearing evidence obtain from Dr. Hunter and Dr. Shonnard and provided reasons why those reports did not provide a basis for reversing the decision of the ALJ.
 
 
 35
 The district court did consider this evidence as it is weighed in the Magistrate Judge's Report and Recommendation. The magistrate noted that this post-hearing evidence actually supported the ALJ's finding that Selman was not disabled, rather than providing a basis for reversing that decision. We therefore find no basis to believe that this evidence was not presented to the district court.
 
 
 36
 Accordingly, there is sufficient evidence in the record to support the Secretary's, the ALJ's, and the district court's determination that Selman was not disabled in that he could perform sedentary work.
 
 
 37
 AFFIRMED.
 
 
 
 *
 This panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Pursuant to Pub.L. No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of Pub.L. No. 103-296, Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action
 
 
 ***
 The Honorable James M. Fitzgerald, Senior U.S. District Judge for the District of Alaska, sitting by designation
 
 
 ****
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 These forms were dated October 2, 1991, December 20, 1991, March 10, 1992, November 2, 1992, January 20, 1993, and March 18, 1993