94 F.3d 651
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tommy G. HOWARD, JR., Plaintiff-Appellant,
v.
Shirley S. CHATER, Secretary, Commissioner of Social
Security, Defendant-Appellee.
 No. 95-35550.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Aug. 16, 1996.
 
 Before: REAVLEY,* REINHARDT, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tommy G. Howard, Jr., a 12 year-old with cerebral palsy, appeals the magistrate judge's grant of summary judgment in this action seeking reversal of the denial of his application for Social Security Income ("SSI") by the Commissioner of the Social Security Administration. Tommy contends that the Commissioner's denial of SSI benefits is not supported by substantial evidence. We have jurisdiction under 28 U.S.C. § 1291 and we AFFIRM.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Tommy G. Howard, Jr., a 12 year-old at the time of his SSI hearing in July 1993, suffers from mild cerebral palsy, which primarily affects the right side of his body. In addition, Tommy has a mild speech impediment as well as a lazy eye. It is the evidence bearing on the severity of these impairments that is relevant on appeal. The following facts were presented to the Administrative Law Judge ("ALJ") who presided over Tommy's SSI hearing.
 
 
 4
 It is undisputed that Tommy has cerebral palsy. This condition affects his right hand such that he is unable to write, hold a cup or squeeze the hand brakes on a bicycle with that hand. Tommy began experiencing trouble with the flexion of his right hand at 16 months. An academic assessment administered by the Spokane School District in May 1992 noted that Tommy was naturally right-handed but due to some right hemiparesis (partial paralysis), he had to become left-handed. Moreover, Dr. Johnson, one of Tommy's treating physicians, found in March 1992 that, although Tommy had full strength in the intrinsic muscles of his right hand, he had a deficit in DIP joint flexion with 4/5 strength. Dr. Johnson concluded that Tommy's cerebral palsy caused decreased strength and decreased fine motor skills in his right hand. She also noted that Tommy writes approximately fifty percent slower than his age group. Dr. Ben Thrower, a neurologist, examined Tommy in August 1992 and noted that in his right arm, he had weak finger abduction and adduction, and his entire right arm appeared smaller than his left. AR 135. Moreover, he had slow and clumsy fine finger movements in the right hand. Dr. Thrower also noted the poor quality of Tommy's handwriting for his age. According to his mother and his school records, Tommy's handwriting is of poor quality, and, because of his slowness, he has difficulty completing in-class assignments.
 
 
 5
 In addition, Tommy has a speech impediment. As a child, his speech was difficult to understand and he did not put two words together until age four. The Spokane School District evaluation found that he misarticulated the "s" and "z" phonemes, and recommended that he be given speech therapy. Moreover, the examiner found that Tommy's educational performance was adversely affected by this communication disorder. Tommy's teacher indicated that he had difficulty understanding Tommy in the classroom setting. Dr. Thrower noted that neurologically Tommy's speech was fluent and correct but mildly dysarthric.[1] Tommy's mother testified that Tommy stutters and although she can understand him, she did not believe others always could.
 
 
 6
 Tommy also presented evidence regarding his ability to use his right leg. As an infant, he never learned to crawl, but he began to walk at 18 months. His mother testified that he favors his right leg when he runs, by not putting his foot fully down. His mother also testified that Tommy's right leg is shorter than his left, but he has never worn a lift to compensate for the height variation. Dr. Johnson noted that Tommy was able to walk and run moderately well. He was not limited in his ability to sit, walk, stand, bend, stoop or crawl. Dr. Johnson stated that Tommy's left leg is shorter than his right leg.[2] Dr. Thrower noted that Tommy is able to participate in most physical activities, his gait was "unremarkable," but Tommy was unable to hop on his right foot without stumbling and falling. Dr. Thrower also indicated that Tommy had some clonus in his right ankle, which apparently indicates diminished reflexes.[3]
 
 
 7
 Tommy had eye surgery at eight months to tighten his eye muscles. His mother did not believe the surgery had helped his "lazy eye." Dr. Thrower noted during his neurological examination that his right eye occasionally lagged behind in visual tracking. The Spokane School District examination also noted that Tommy had a major deficit in visual-motor control, with a visual motor age of 6-2. The report states that his primary problem may be in ocular motor control and visual perceptual areas of content and that, although the problems do not appear to be affecting his academic performance, they need further clarification.
 
 
 8
 In addition to the above evidence, Tommy submitted the letter of Dr. Donald A. Baker, who examined Tommy in April and August 1992, and referred Tommy to Dr. Thrower for a neurological examination. Dr. Baker stated:
 
 
 9
 Tommy does have persistent disorganization of his motor function for his age involving upper and lower extremities. This does interfere with age-appropriate major daily activities. He demonstrates inadequate equilibrium and coordination of both his upper extremities and both his lower extremities. He does have a spastic gait and station.
 
 
 10
 Dr. Baker concluded that Tommy therefore satisfied the Listing 111.06 requirements.
 
 
 11
 At the hearing, Dr. Craig, who specializes in internal medicine, testified that he had reviewed Tommy's medical records and was of the opinion that Tommy's impairments did not meet the Listing 111.06 or Listing 111.07 requirements. Dr. Craig stated that Tommy's problem was chiefly with his right upper extremity, and despite the evidence that he was unable to hop on his right foot, he could walk, run, play sports and ride a bicycle in a "reasonably normal fashion." Moreover, he stated that according to Tommy's medical record he did not have a spastic gait or station. With regard to Tommy's ability to communicate, Dr. Craig noted that Tommy's communication skills are "sub-par" in that Tommy's teacher has difficulty understanding him, and his writing roughly one-half the normal speed. On the other hand, Tommy could be understood when answering questions at the hearing and he has a normal ability to understand others. Based upon these two items, Dr. Craig concluded that Tommy did not have a "significant" communication impairment.
 
 
 12
 The ALJ issued a written opinion, denying Tommy's application for SSI benefits. He found that Tommy suffered from mild cerebral palsy and secondarily from a mild speech impediment. The ALJ rejected Dr. Baker's opinion that Tommy met the requirements for SSI benefits because the record contained no evidence that Dr. Baker objectively verified his conclusions. Further, the ALJ relied on Dr. Craig's testimony that Dr. Baker's conclusions were contradicted by the other medical history evidence. The ALJ then found that Tommy did not meet the requirements of Listing 111.06 or 111.07. Further, he found that Tommy did not have impairments that are of comparable severity to a combination of impairments that would entitle an adult to SSI benefits.
 
 
 13
 Tommy requested review of this decision before the Social Security Administration Appeals Council, which denied review. Tommy then filed this action in district court seeking reversal of the Commissioner's denial of his application for benefits. Both parties consented to have the action referred to a magistrate judge. The magistrate then granted summary judgment in favor of the Commissioner, holding that substantial evidence supported the ALJ's denial of benefits.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 14
 We review the magistrate judge's grant of summary judgment de novo. Saelee v. Chater, 83 F.3d 322, 323 (9th Cir.1996). We must uphold the Commissioner's denial of SSI benefits if the Commissioner's factual determinations (through the ALJ) are supported by substantial evidence. 42 U.S.C. § 405(g); Saelee, 83 F.3d at 323.
 
 
 15
 II. ARE THE ALJ'S FACTUAL FINDINGS SUPPORTED BY SUBSTANTIAL EVIDENCE?
 
 
 16
 Tommy contends that the ALJ erred in concluding that he was not presumptively disabled because he failed to meet the requirements of Listing 111.06 or Listing 111.07. Tommy claims, therefore, that the ALJ should not have reached the issue of whether Tommy's impairments were not of comparable severity to those which would disable an adult. For the following reasons, we disagree.
 
 
 17
 The method for determining whether a child is disabled is set forth in 20 C.F.R. § 416.924. First, the ALJ must determine whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(c). If not, the ALJ then considers whether the child has a "severe" impairment, i.e., an impairment that is more than a slight abnormality and that causes more than a minimal limitation in the child's ability to function independently, appropriately and effectively in an age-appropriate manner. 20 C.F.R. § 416.924(d). If the child has a severe impairment, he or she is considered presumptively disabled (and entitled to SSI) if he or she meets the criteria set forth in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.924(e).[4]
 
 
 18
 Tommy claims that he meets the criteria for two list impairments. First, Listing 111.06 provides:
 
 
 19
 111.06 Motor dysfunction (due to any neurological disorder). Persistent disorganization of deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of:
 
 A. Fine and gross movements; or
 
 20
 B. Gait and station.
 
 
 21
 20 C.F.R. Part 404, Subpart P, App. 1.
 
 
 22
 The ALJ concluded that Tommy has mild cerebral palsy affecting the use of his "non-dominant right upper extremity," but that he did not meet the criteria of Listing 111.06. We conclude that substantial evidence supports this conclusion. Other than Tommy's right arm, the only other extremity affected by his cerebral palsy is his right leg. His right leg is shorter than his left, he favors his right leg when running and he is unable to hop on that leg. However, according to Tommy, his mother, and Drs. Johnson and Thrower, he can run, bike, play sports, climb stairs, walk and stand without difficulty. According to Dr. Thrower his gait is unremarkable.
 
 
 23
 The only evidence that supports Tommy's claim that he meets the Listing 111.06 criteria is Dr. Baker's letter, which states that Tommy has "persistent disorganization of his motor function for his age involving upper and lower extremities." The ALJ, however, permissibly rejected this opinion.
 
 
 24
 Where the opinion of the claimant's treating physician is contradicted, and the opinion of the non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict. Magallanes, 881 F.2d at 751. Where, on the other hand, a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical finding also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record.
 
 
 25
 Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)). Here, the ALJ properly rejected Dr. Baker's conclusory statements because the record contained no evidence establishing that Dr. Baker objectively verified his conclusion and because Dr. Craig stated that the opinion was not in accord with the other treating physicians' examinations of Tommy. Thus, there is simply no evidence that Tommy's right leg was affected by his cerebral palsy so as to interfere with age appropriate major daily activities and to result in the disruption of fine and gross movements or gait and station.
 
 
 26
 Tommy also argues that he meets the criteria for Listing 111.07, which states:
 
 111.07 Cerebral Palsy. With:
 
 27
 A. Motor dysfunction meeting the requirements of 111.06 or 101.03; or
 
 
 28
 B. Less severe motor dysfunction (but more than slight) and one of the following:
 
 1. IQ of 70 or less; or
 
 29
 2. Seizure disorder, with at least one major motor seizure in the year prior to application; or
 
 
 30
 3. Significant interference with communication due to speech, hearing or visual defects; or
 
 
 31
 4. Significant emotional disorder.
 
 
 32
 20 C.F.R. Part 404, Subpart P, App. 1. Tommy claims that he has a "less severe motor dysfunction" and significant interference with communication due to speech, hearing or visual defects. There is no question that Tommy's difficulties with his right hand and arm are a "less severe motor dysfunction;" the ALJ, however, concluded that Tommy's speech impediment was "mild," and not equal in severity to either listing.
 
 
 33
 Whether this finding is supported by substantial evidence is a close question. The ALJ noted that Tommy has a "less than moderate limitation in the communicative functioning domain." He relies on evidence in the record that demonstrates that Tommy's voice is within normal limits; his fluency is within normal limits; and he has adequate structures for speech. In addition, Tommy was in the appropriate grade for his age, and was performing adequately.
 
 
 34
 On the other hand, uncontradicted evidence shows that Tommy has difficulty articulating "s" and "z" phonemes. Moreover, the Spokane School District examination, his teachers' comments and his mother's testimony all indicate that his teachers have difficulty understanding him in the class room setting. In addition, although he skipped a grade (which placed him in his age-appropriate grade because he had repeated a grade early on), it appears that his grades are below his aptitude due to some combination of his slower writing speed and his difficulties interacting in the classroom setting. Overall, however, we find that the ALJ's decision that Tommy's speech impediment did not cause significant interference with communication is supported by substantial evidence.
 
 
 35
 Lastly, Tommy argues that the ALJ erred in assessing the list criteria, and thus should not have made an individualized assessment to determine if Tommy's impairment was comparable to an impairment that would qualify an adult for benefits. Because substantial evidence supports the ALJ's findings regarding the list criteria, the ALJ was required to conduct an individualized assessment. Tommy raises no other challenge to the ALJ's individualized assessment.
 
 CONCLUSION
 
 36
 For the foregoing reasons, we AFFIRM the grant of summary judgment in favor of the Commissioner.
 
 
 
 *
 Hon. Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 "Dysarthria" is a difficulty in articulating words due to a disease in the central nervous system. Webster's Ninth New Collegiate Dictionary, p. 391 (1984)
 
 
 [2]
 It is unclear whether Tommy's mother or Dr. Johnson is in error regarding which leg is shorter
 
 
 [3]
 "Clonus" is a rapid succession of alternating contractions and partial relaxations of a muscles occurring in some nervous diseases. Webster's Ninth New Collegiate Dictionary, p. 250
 
 
 [4]
 If a child does not meet the criteria of a listed impairment, the ALJ must consider the impairment's impact on the child's ability to function independently, appropriately and effectively in an age-appropriate manner and thus determine whether the impairment is of comparable severity to an impairment that would prevent an adult from engaging in substantial gainful activity. If the impairment substantially affects these functions and the disability meets the duration requirements, the child is considered disabled. 20 C.F.R. § 416.924(f)