**NOT FOR PUBLICATION**

FILED

MAY 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MILLIE SHAW,

          Plaintiff-Appellant,

  v.

OFFICE OF NAVAJO AND HOPI
INDIAN RELOCATION, an
Administrative Agency of the United
States,

          Defendant-Appellee.

No.   20-16112

D.C. No. 3:19-cv-08238-DLR

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted April 12, 2021
San Francisco, California

Before: SCHROEDER and BADE, Circuit Judges, and JACK,[**] District Judge.
Dissent by Judge BADE

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Janis Graham Jack, United States District Judge for the Southern District of Texas, sitting by designation.

Millie Shaw, who is Navajo, appeals the district court's grant of summary judgment affirming the administrative decision by the Office of Navajo and Hopi Indian Relocation (ONHIR) denying her application for relocation benefits under the Navajo-Hopi Settlement Act. We have jurisdiction pursuant to 28 U.S.C. § 1291 and review the district court's summary judgment decision de novo. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). We review ONHIR's decision to determine if it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989); *see also* 5 U.S.C. § 706(2)(A), (E). We reverse.

Shaw is entitled to benefits if she was a legal resident of land that later became Hopi Partitioned Lands (HPL), as of the critical date of December 22, 1974. 25 C.F.R. § 700.147. She qualifies as a legal resident of the land if she was using it for traditional activities. It is not disputed that Shaw's family had both a summer and winter camp, and that the hogan for each camp was located on land that later became the Navajo Partitioned Lands (NPL). The sweat lodge, grazing lands, cornfields, and watering holes for the winter camp, however, were on the HPL. It is also not disputed that Shaw lived with her family following the birth of her son in May 1974 and had no outside employment. She testified that after her

2

son was born she went back and forth between the camps and lived with her father, mother, and siblings at both camps.

In earlier proceedings, Shaw's father, mother, and sister received benefits. The same Hearing Officer (HO) held in this case that Shaw had not shown she could be considered to have made any use of the HPL. The district court upheld that determination.

Shaw first contends that the HO erred in failing to apply principles of general domicile law, arguing that if Shaw established past domicile on the HPL, the burden was on the government to prove that domicile had changed and that she was not a resident of the HPL. The burden of proving residence under this Act lies with the applicant. 25 C.F.R. § 700.147(b). We have found no authority to support Shaw's alternative theory, and Shaw cites none.

The issue then becomes whether the HO's decision that Shaw engaged in no traditional activities on the HPL after 1972 was supported by substantial evidence. There is no direct evidence to support that conclusion. Shaw testified that she herded sheep only on the summer side, and, in May, slept in the summer camp. However, she also testified that she lived in both camps after the birth of her son, sometimes gathered sheep near the winter camp, and gathered wood and helped her

3

mother with animals on the winter side. She also testified that she hauled water; the watering holes were on the HPL.

Shaw returned home to live with her family after her sister's death in 1972. After the birth of her son in May 1974, Shaw did not have outside work. Per Shaw's testimony, she was immersed in a traditional Navajo lifestyle with her family during that time. The HO found that, for the purposes of the Act, her parents and sister resided on the HPL as of December 22, 1974. The HO never explained why his conclusion here is inconsistent with his decision in the cases of Shaw's family members with whom she lived and worked in traditional activities.

We conclude that the HO's decision is not supported by substantial evidence, and Shaw is entitled to benefits.

Judgment of the district court is **REVERSED**, and the case **REMANDED** to the district court with instructions to direct the ONHIR to grant benefits.

4



*Shaw v. Office of Navajo and Hopi Indian Relocation*, No. 20-16112

BADE, Circuit Judge, dissenting:

The majority concludes that the Office of Navajo and Hopi Indian Relocation's (ONHIR) decision denying relocation benefits to Millie Shaw under the Settlement Act, 25 U.S.C. §§ 640d to 640d-31, is not supported by substantial evidence. But under this "highly deferential" standard of review, we must affirm when "a reasonable basis exists for [the agency's] decision." *Cal. Pac. Bank v. Fed. Deposit Ins.*, 885 F.3d 560, 570 (9th Cir. 2018) (citation omitted); *see also id.* ("Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation omitted)). And, critically, it is the agency's responsibility to "resolv[e] ambiguities." *See id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Because the evidence to establish Shaw's entitlement to relocation benefits is, at best, ambiguous and inconclusive, I respectfully dissent. *See Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 960 F.3d 1120, 1132–33 (9th Cir. 2020) (explaining that if the evidence is inconclusive, we must uphold the agency's decision).

**I.**

I agree with the majority that Shaw, a Navajo, is only entitled to relocation benefits under the Settlement Act if she established during the ONHIR proceedings that, on December 22, 1974, she resided on land that was partitioned under the Act

1

to the Hopi Tribe (Hopi Partitioned Land or HPL). *See* 25 C.F.R. § 700.97(a). Shaw conceded that she lived on land partitioned to the Navajo Nation (Navajo Partitioned Land or NPL) in December 1974, and the majority correctly rejected her burden-shifting argument in which she sought to establish residency on HPL based on her past domicile. Therefore, she could only establish entitlement to benefits under the ONHIR policy recognizing residency based on "continuous use" of "a customary use area [that] existed on December 22, 1974."[1]

To meet this burden, Shaw testified that from 1972 to 1974 she intermittently helped her family with various tasks, including herding sheep, caring for the family's livestock, gathering wood, and hauling water. She performed these tasks at the family's homesites, which she described as the winter camp and the summer camp. Testimony during Shaw's hearing supports that the residences and all improvements at both homesites were located on NPL. The hearing officer found that Shaw did not establish that she performed traditional activities on HPL, and the ONHIR adopted that determination as its final decision.

The majority concludes that the hearing officer erred because Shaw testified that she gathered wood and hauled water. But Shaw testified that she

---

[1] This policy of recognizing residency based on the "continuous use" of "a customary use area" is not codified in the federal regulations, but instead is based on an independent hearing officer's decision in *In re Minnie Woodie*, No. 5124. *Begay v. ONHIR*, 305 F. Supp. 3d 1040, 1048 (D. Ariz. 2018).

2

"sometime[s]" performed these tasks, but only on weekends, to help her father while she worked weekdays from October 1973 to July 1974. Shaw further testified that the only work she did after July 1974 was limited to helping "clean [her] mom's house" and taking care of the livestock. But she also testified that she did not work after her son was born in May 1974 and that she was "just taking care" of her son. The record therefore supports the conclusion that Shaw was not gathering wood or hauling water after July 1974, which is several months before the determinative date of December 22, 1974.

Additionally, the record does not establish that Shaw continuously performed any traditional activity, at any time, on HPL.[2] Instead, Shaw testified

---

[2] Contrary to the majority's assertion that "[p]er Shaw's testimony," she "was immersed in a traditional Navajo lifestyle with her family during that time," Shaw testified only that she tried to weave "but [] didn't do it." She did not testify that she engaged in any activities that were part of "a traditional Navajo lifestyle," except sheep herding, which she testified occurred only on NPL. The majority nonetheless concludes that the ONHIR erred because it failed to properly apply its traditional use policy, as recognized in the *Minnie Woodie* decision, *see supra* note 1. But the applicant in *Minnie Woodie* was a "traditional Navajo elder . . . living a traditional Navajo lifestyle," in which she "carded wool, dyed wool, wove rugs from the wool and followed the sheep from camp to camp along with other family members." She also "gathered herbs from which to make dyes in various areas of the traditional use area [and] set up her loom wherever the family traveled throughout the traditional use area." The great disparity between Shaw's activities and the activities of the applicant in *Minnie Woodie* further supports the ONHIR's determination that Shaw did not establish she used HPL for traditional activities. *See Fall River Rural Elec. Co-op., Inc. v. FERC*, 543 F.3d 519, 528–29 (9th Cir. 2008); *see also Atchison, Topeka & Santa Fe Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 808–09 (1973) (cautioning that courts must avoid invading the policymaking

that she herded sheep exclusively on NPL, intermittently helped her mother care for livestock, and helped her father gather wood and haul water.  But she did not say where she performed these activities, or whether she engaged in these activities with sufficient regularity to demonstrate that she made continuous use of HPL.  The majority relies on testimony from another hearing, that occurred eight years before Shaw's hearing, and involved other applicants who testified that there were waterholes on HPL.  The majority then infers that Shaw must have hauled water from waterholes on HPL.  Tellingly, Shaw never said she hauled water from a waterhole or from any water source on HPL.

The majority is simply filling in the evidentiary gaps and drawing inferences in Shaw's favor.  But that is not our role when reviewing agency actions for substantial evidence.  Instead, it is the agency's responsibility to "resolv[e] ambiguities." *See Cal. Pac. Bank*, 885 F.3d at 570.  And, at best, the record here is unclear on whether Shaw hauled water or performed any other traditional activity on HPL as of December 22, 1974.  Because the evidence was inconclusive, the ONHIR was entitled to resolve these ambiguities against Shaw.  *See Nat'l Fam. Farm Coal.*, 960 F.3d at 1133; *Cal. Pac. Bank*, 885 F.3d at 570.

---

domain of the agency when analyzing whether the agency properly distinguished prior agency decisions).

4

## II.

The majority also emphasizes that Shaw's father and her sister received relocation benefits and asserts that there is disparity between those decisions and the denial of benefits to Shaw. However, nothing in the record indicates why her father and sister received relocation benefits. Even if we assume that the ONHIR determined that her father and sister were entitled to relocation benefits because they continuously used HPL for traditional activities, that determination would not demonstrate that Shaw also continuously used HPL for traditional activities.[3] The majority improperly draws inferences from ambiguous evidence, a task that we must leave to the ONHIR. *See Cal. Pac. Bank*, 885 F.3d at 570.

## III.

The majority engages in de novo review of the ONHIR's factual findings and disregards the highly deferential standard of review that applies to agency actions. The ONHIR was entitled to resolve the ambiguities in the record against

---

[3] Shaw's father, Charley Daw, received a notification of eligibility for relocation assistance benefits, dated January 12, 2011, but the notice does not explain the ONHIR's eligibility determination. In a decision received by the ONHIR on February 6, 2008, a hearing officer upheld the denial of benefits to Shaw's sister, Marie Daw. The sister's application was later granted, but the record provides no explanation for that decision or when it occurred. Because the benefits applications of Shaw's father and sister were apparently decided before the ONHIR Executive Director's September 4, 2012 decision announcing the *Minnie Woodie* exception, *supra* note 1, it is difficult to determine whether their applications were decided based on an analysis of continuous traditional use of HPL, and thus can be meaningfully compared to Shaw's case.

5

Shaw, and the paucity of evidence that Shaw performed traditional activities on HPL as of December 22, 1974 sufficiently supports the ONHIR's determination that Shaw did not meet her burden. *Cal. Pac. Bank*, 885 F.3d at 570. I respectfully dissent.