Barton v. SSA                    CV-98-081-M    03/24/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Holly L. Barton,
      Claimant

      v.                                          Civil No. 98-081-M

Kenneth S. Apfel, Commissioner,
Social Security Administration,
      Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Holly Barton, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (the "Act").[1]  She asserts that the Administrative Law Judge erroneously discounted her subjective complaints of pain and failed to ascribe proper weight to the opinions of one of her treating physicians. Defendant objects and moves for an order affirming the decision of the Commissioner.

**Factual Background**

I.    Procedural History.

---

[1]    Title II of the Act provides for the payment of benefits to individuals who have contributed to the program and become disabled.  Title XVI of the Act provides for the payment of benefits to individuals who meet certain income requirements and have attained the age of 65, are blind, or are disabled.

On May 17, 1995, claimant filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging that she had been unable to work since November 22, 1994. The Social Security Administration denied her application initially and on reconsideration. On August 29, 1996, claimant and her attorney appeared before an Administrative Law Judge, who considered claimant's application de novo. On October 4, 1996, the ALJ issued his order, concluding that claimant retained the residual functional capacity to perform her past relevant work. Administrative transcript, at 20. Accordingly, the ALJ determined that claimant was not disabled, as that term is defined in the Act, at any time through the date of his decision.

Claimant then sought review of the ALJ's decision by the Appeals Council. On December 11, 1997, the Appeals Council denied her request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review. On February 13, 1998, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act. Subsequently, claimant filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7). The Commissioner objected and countered with a "Motion for Order Affirming the Decision of the

Commissioner" (document no. 9). Those cross-motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 8), need not be recounted in this opinion.

**Standard of Review**

I. Properly Supported Findings by the ALJ are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may be substantial evidence supporting the claimant's

_____

[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

3

position.  See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision.").  See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts."  Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age,

5

and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals a listed impairment;

(4)  whether the impairment prevents the claimant from performing past relevant work; and

(5)  whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.902.  Ultimately, a claimant is disabled only if her:

physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age,

6

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I.   Background - The ALJ's Findings.

In concluding that Ms. Barton was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  At step 1 of the analysis, he concluded that claimant had not engaged in substantial gainful activity since November 22, 1994.[3]  He next determined that, while claimant does suffer from a severe impairment (as defined in 20 C.F.R. §§ 404.1521 and 416.921), her impairment does not meet or equal any of the impairments listed in Appendix 1 to Subpart P of Regulation No. 4.  Administrative transcript at 15.  At step four of the analysis, the ALJ concluded his inquiry, determining that despite her impairment, claimant retained the residual functional

---

3    Although Ms. Barton briefly returned to work following her automobile accident, the ALJ considered that to have been an "unsuccessful work attempt."  Administrative transcript at 15.

7

capacity to perform light work.  Administrative transcript at 18.

Accordingly, the ALJ concluded that she was capable of performing

her past relevant work, which required physical exertion at only

the sedentary level.[4]

> I find that with the claimant's limitations noted above, she
> would [] not be precluded from returning to her work as a
> secretary, receptionist or word processor which are
> generally sedentary exertionally and would not exceed the
> claimant's physical capabilities.  She retains the ability
> to perform her past relevant work activity.  I find,
> therefore, the claimant is not disabled within the meaning
> of the Social Security Act at any time prior to the date of
> this decision.

Administrative transcript at 19.

II.  Weight Ascribed to Opinions of Treating Physicians.

Claimant asserts that the ALJ erred by failing to "assign

appropriate weight to the findings of one of [her] treating

physicians."  Claimant's motion (document no. 7) at 2.

Specifically, she says that the ALJ should not have dismissed Dr.

Bruton's opinion that claimant was capable of lifting only 10

pounds occasionally and five pounds frequently, an RFC consistent

---

4    The pertinent regulations define light work as involving the
"lifting [of] no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds.  Even
though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or
when it involves sitting most of the time with some pushing and
pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and
416.967(b).  Sedentary work, on the other hand, "involves lifting
no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools. .
. . Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met."  20 C.F.R. §§
404.1567(a) and 416.967(a).

8

with work at the sedentary level (as noted above, the ALJ concluded instead that claimant could lift up to 20 pounds occasionally and 10 pounds frequently and, therefore, was able to perform light work).[5]

Generally, the ALJ must afford more weight to the medical opinions of a claimant's treating physicians because those sources are:

> likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Of course, the ALJ may decide not to give controlling weight to the opinions of a claimant's treating physicians. However, if the ALJ does not give those opinions controlling weight, he or she must "always give good reasons in [the] notice of determination or decision for the weight [actually ascribed] to [the claimant's] treating source's opinion." Id.

---

5    Claimant suggests that the functional capacity assessment (a portion of which the ALJ allegedly improperly discounted) was prepared by Dr. Rudins. The record suggests, however, that the ALJ properly noted that this report was prepared by Dr. William Bruton. See Administrative transcript at 17, 192-201. See also Joint Statement of Material Facts (document no. 8) at 6.

9

Although this point is not raised by the Commissioner, claimant's assertion of error would seem to have little practical effect on the outcome of this case. Even if, as she claims, she were capable of lifting only 10 pounds occasionally and five pounds frequently (as Dr. Bruton reported), she would still be able to perform sedentary work of the sort she previously performed as a secretary, receptionist, and word processor. <u>See</u> 20 C.F.R. §§ 404.1567(a) and 416.967(a). <u>See also</u> Dictionary of Occupational Titles §§ 201.362.030; 203.383-030; 203.583-066; and 237.367.038. And, that is precisely what the ALJ concluded.[6]

At step four of the sequential analysis, the ALJ must determine whether the claimant has carried her burden by demonstrating that she is incapable of performing her previous work. Here, claimant points to evidence in the record (in the form of a medical opinion suggesting that she has residual functional capacity to perform sedentary work) which actually supports the ALJ's conclusion that she was able to perform her previous work. Thus, even if the ALJ did fail to assign proper weight to a treating source's medical opinion (which, based upon the record before the court, seems highly unlikely), that error would not have undermined his ultimate conclusion, which is

6     Claimant does not challenge the ALJ's conclusion that her past relevant work as a receptionist, word processor, and secretary are all jobs properly categorized as being at the "sedentary" exertional level. Nor does claimant assert that she suffers from any non-exertional limitations which might hinder her ability to find appropriate work in the national economy.

supported by substantial evidence, that claimant failed to demonstrate that she was incapable of performing her previous work.

III. <u>Weight to be Ascribed to Claimant's Subjective Complaints of Pain</u>.

Claimant next argues that the ALJ failed to consider her oral testimony (suggesting that she was incapable of performing any work in the national economy) and improperly discounted her subjective complaints of pain. Among other things, claimant alleges that the ALJ misconstrued the record evidence and improperly concluded that her subjective complaints of pain were both overstated and inconsistent with the physical findings of her treating physicians. She asserts that the ALJ improperly (and without adequate foundation) discounted her complaints of pain and says that the ALJ's conclusion that she retains the RFC to perform her past relevant work is not supported by substantial evidence.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain. <u>See</u> <u>Manso-Pizzarro v. Secretary of Health & Human Services</u>, 76 F.3d 15, 17 (1st Cir. 1996). When, as here, the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain she alleges, the ALJ must then evaluate the

intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit her ability to do basic work activities. See Social Security Ruling ("SSR") 96-7p (July 2, 1996).

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individuals' statements.

Id. Those factors include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

12

In challenging the ALJ's disability determination, claimant points to portions of her testimony at the hearing which support her assertion that she is totally disabled. Specifically, she notes that she testified that: she would return to work if she were physically able to do so (administrative transcript at 248); she does not believe that she is capable of performing any work in the national economy because she is unable to sit or stand for prolonged periods (id., at 248-49); and she could neither sit for six hours a day nor stand for two hours a day (id., at 250).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined her, and to consider the other relevant factors identified by the regulations and applicable case law. Part of his credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability." Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court. See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

13

Here, in support of his conclusion that claimant's assertions of pain were not entirely credible, the ALJ considered, among other things, that claimant suffers from no neurological deficiencies, that the objective medical findings in her records provide only "minimal" support for her allegations of pain (e.g., "the results of physical examinations have been limited to tenderness on palpation and some restricted motion," administrative transcript at 18), and that claimant's daily activities included light house cleaning, cooking, occasional shopping, visiting friends and family, reading, watching television, and, on occasion, picking up her children at school or from friends' homes. Administrative transcript at 18-19. Accordingly, the ALJ first concluded that claimant's complaints of pain did not interfere with her ability to concentrate. Next, he concluded that, in light of her daily activities, those complaints were somewhat overstated. Id.

In addition to the factors identified by the ALJ, the record contains additional support for his conclusion that claimant is not disabled within the meaning of the Act. For example, in March of 1995, claimant's internist, Dr. Johnson, observed (in his referral letter to Dr. Rudins) that, "[o]ther than some slight tenderness, I am unable to detect any other abnormalities on her current physical examination." Administrative transcript at 149. After meeting with and examining claimant in March, May, and July of 1995, Dr. Rudins reported that he "suggested that

14

[claimant] start investigating options for work. Even if she cannot tolerate full-time sitting, a part-time job would be perfectly reasonable." Id., at 175.

That opinion was shared by Robert Raime, M.D., and Munro Proctor, M.D., the two DDS physicians who reviewed claimant's medical records. Each concluded that her impairments did not prevent her from performing light work. Administrative transcript at 72-79. Finally, in the functional capacity assessment completed in January 1996 and discussed above, Dr. Bruton concluded that: (1) claimant can lift and/or carry up to 10 pounds occasionally and up to five pounds frequently; (2) claimant can sit for up to eight hours a day, provided she is able to take an hourly break; (3) claimant's ability to stand/walk was unaffected by her impairment; (4) claimant could climb, balance, stoop, crawl, kneel, and crouch occasionally during the work day; and (5) claimant's ability to reach, handle, feel, push/pull, see, hear, and speak were all unaffected by her impairment. Administrative transcript at 192-200. All of this evidence supports the ALJ's conclusion that claimant's allegations of disabling pain were somewhat overstated and, notwithstanding those allegations, she retains, at a minimum, the ability to perform her prior work at the sedentary exertional level.

As claimant points out, however, there is certainly evidence in the record which suggests that she is disabled (most notably, claimant's own testimony about the disabling nature of her pain). However, the scope of this court's review of the ALJ's decision is not de novo; rather, it is limited. Even when there is evidence in the record which weighs against the ALJ's disability determination, the court must affirm that decision if it is supported by substantial evidence. See Gwathney v. Chater, 104 F.3d at 1045; Andrews v. Shalala, 53 F.3d at 1039-40. When a claimant's subjective complaints are appropriately considered in light of the Avery factors, the credibility determination is left to the ALJ. Frustaglia, 829 F.2d at 195. Because the ALJ's credibility findings in this case are properly supported by the record, they stand.

## Conclusion

No one appears to dispute the fact that Ms. Barton experiences fairly significant pain as a result of the injuries she sustained in the November, 1992 motor vehicle accident. However, the issue presented is whether there is substantial evidence in the record to support the ALJ's conclusion that her subjective complaints of pain were somewhat overstated and, in light of her residual functional capacity, she was capable of returning to her past relevant work at the sedentary exertional level.

For the reasons set forth above, the court concludes that the ALJ's determination that claimant was not disabled within the meaning of the Act is supported by substantial evidence and, therefore, is affirmed. Accordingly, claimant's motion for order reversing the decision of the Commissioner (document no. 7) is denied and the Commissioner's motion for order affirming his decision (document no. 9) is granted. The Clerk of the Court is directed to enter judgment in accordance with the terms of this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 24, 1999

cc:  Brian P. McEvoy, Esq.
     David L. Broderick, Esq.

17