May v. SSA                              CV-01-269-M    05/16/02
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Diane J. May,
     Claimant

     v.                                     Civil No. 01-269-M
                                            Opinion No. 2002 DNH 094
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
     Respondent


                           **O R D E R**


     Pursuant to 42 U.S.C. § 405(g), claimant, Diane J. May,

moves to reverse the Commissioner's decision denying her

applications for Social Security Disability Insurance Benefits

and Supplemental Security Income Payments under Titles II and

XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423,

1382 (the Act).  Respondent objects and moves for an order

affirming her decision.


                     **Factual Background**

I.   Procedural History.

     In the Fall of 1998, claimant filed applications for

disability insurance benefits and supplemental security income

payments under Titles II and XVI of the Act, alleging that on

June 1, 1998, when she was 37 years old, she became disabled due to fibromyalgia syndrome, irritable bowel syndrome, and depression with anxiety (claimant later amended her alleged disability onset date to November of 1997). The Social Security Administration denied her application initially and on reconsideration.

On October 4, 2000, claimant, her attorney, and a vocational expert appeared before an Administrative Law Judge (ALJ) who considered her claims de novo. The ALJ issued his order on November 17, 2000, concluding that, although subject to some restrictions, claimant was capable of performing sedentary work and was not, therefore, precluded from returning to her past relevant work as a loan officer, account clerk, or bookkeeper. On May 19, 2001, the Appeals Council denied claimant's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.

In response, claimant filed this timely action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within

2

the meaning of the Act.  Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 9).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  Properly Supported Factual Findings by the ALJ
    are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C.

3

§§ 405(g), 1383(c)(3); <u>Irlanda Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1]  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position.  See <u>Tsarelka v. Secretary of Health and Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  <u>See also</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

---

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a

5

continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of

Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

7

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.920.  Ultimately,

a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [s]he is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [s]he lives, or
> whether a specific job vacancy exists for [her], or
> whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm the

determination that claimant is not disabled.

**Discussion**

I.   Background - The ALJ's Findings.

In concluding that claimant was not disabled within the

meaning of the Act, the ALJ properly employed the mandatory five-

step sequential evaluation process described in 20 C.F.R.

§§ 404.1520 and 416.920.  Accordingly, he first determined that

claimant had not been engaged in substantial gainful employment

8

since her alleged onset of disability.  Next, the ALJ concluded that the medical evidence of record "indicates that the claimant has fibromyalgia syndrome, irritable bowel syndrome and a history of depression with anxiety, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  Transcript at 20.

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that she "retains the residual functional capacity to perform sedentary work lifting up to 10 pounds occasionally with occasional standing and walking and with the need to avoid overhead reaching or frequent stooping, kneeling, crouching or crawling.  The claimant must also be able to change postural positions periodically."  Transcript at 20. Finally, at step four of the sequential analysis, the ALJ concluded that, based upon the record evidence and testimony from the vocational expert, claimant retained the RFC to perform her past relevant work as a loan officer, a bookkeeper, and an accounts payable/receivable clerk.  Transcript at 21.  In light of that conclusion, there was no need to proceed to step five of

9

the sequential analysis and the ALJ determined that claimant was not disabled within the meaning of the Act.

II. <u>Weight Ascribed to the Opinions of Claimant's Treating Physicians</u>.

In challenging the ALJ's disability determination, claimant first asserts that the ALJ failed to give sufficient weight to the opinions of her treating physicians. As is the case with other credibility issues, the ALJ has significant discretion with respect to the weight afforded to medical opinions. However, under the regulations, a treating physician's medical opinion will generally be given controlling weight unless the ALJ finds that the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and concludes that it is not supported by substantial evidence in the record, in which case the opinion may be afforded less or no weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although the issue is not entirely free of doubt, the court has, for purposes of this order, assumed that both Dr. Libbey and Dr. Gorman may properly be viewed as "treating sources" under the pertinent regulations.

10

When a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, to afford it after considering the following factors:

(1)  Length of the treatment relationship and the frequency of evaluation;

(2)  Nature and extent of the treatment relationship;

(3)  Relevant evidence provided to support the opinion;

(4)  Consistency of the medical source's opinion with the record as a whole;

(5)  Whether the medical source's opinion is within his or her field of specialty training; and

(6)  Any other factors claimant or others bring to the ALJ's attention, or of which the ALJ is aware, that tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(d)(2)(i)-(d)(6), 416.927(d)(2)(i)-(d)(6). See also Guyton v. Apfel, 20 F.Supp.2d 156, 167 (D. Mass. 1998). Here, the ALJ found that neither assessment provided by claimant's treating physicians was consistent with the record evidence.  Specifically, he observed:

> While the undersigned has considered Dr. Gorman's and Dr. Libbey's residual functional capacity assessments, neither assessment is consistent with observations made upon examination of the claimant nor is either assessment consistent with the claimant's activity level.  The claimant is quite active and is able to

11

> maintain social relationships as well as care for her
> young son according to her report to Dr. Rooney.  The
> claimant receives only intermittent medical care and
> has not carefully followed recommendations that she
> perform regular exercise.  Further, State Agency
> Physician, Dr. [Burton] Nault noted that the record did
> not indicate that claimant was totally disabled.  The
> claimant cannot be found to be fully credible with
> regard to her assertions of disabling pain in light of
> her self-report of her activities to Dr. Rooney and her
> admitted ability to care for her young son and to
> interact with friends and family.

Transcript at 20 (citation omitted).

In the report referenced by the ALJ, Dr. Rooney made the following observations based upon his examination of claimant in September of 1998: claimant "denied having any current problems with depression now that she has left her job" (transcript at 203); "her attention and concentration appeared to be within normal limits" (id.); she "described a typical day as involving her taking her son to day-care, taking her medications, and performing household tasks" (id., at 204); she "described her social interactions as involving going to live blues music as well as going to different fairs and festivals with friends" (id.); she "reported that she can perform her needed activities of daily living, although on some days it is more difficult for

12

her as a result of muscle spasms (id., at 205); and she "reported that she can cook, but cannot do a lot of reaching or lifting" (id.).

As for the residual functional capacity questionnaires completed by Dr. Libbey and Dr. Gorman, the ALJ correctly noted that the doctors' conclusions were based almost exclusively upon claimant's reported symptoms; results from nearly all diagnostic testing performed on her were within normal parameters. For example, Dr. Libbey's conclusions regarding claimant's residual functional capacity were based upon the claimant's assertion that she suffered from the following symptoms: multiple tender points; nonrestorative sleep; chronic fatigue; morning stiffness; muscle weakness; subjective swelling (postural, neck); Irritable Bowel Syndrome; frequent, severe headaches; Premenstrual Syndrome (PMS); vestibular dysfunction; Temporomandibular Joint Dysfunction (TMJ); numbness and tingling; Sicca symptoms; Dysmenorrhea; breathlessness; anxiety; panic attacks; depression; Carpal Tunnel Syndrome; and Chronic Fatigue Syndrome. Transcript at 247. In light of those asserted symptoms, it is not surprising that Dr. Libbey (and Dr. Gorman) viewed claimant as

13

totally disabled.  Curiously, however, Dr. Libbey never commented on her observation that although claimant says "she has pain with any motion of any joint, she has full range when distracted." Transcript at 254.  At a minimum, that observation suggests that while likely not an intentional effort to deceive, claimant did tend to overstate the symptoms of her impairments and the intensity of her pain when meeting with her doctors.

To be entitled to "controlling weight," the medical opinions of a treating source must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and cannot be inconsistent with "other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  See also Social Security Ruling ("SSR") 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) (providing, among other things, that "controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques").  Here, claimant has pointed to no laboratory diagnostic tests that support her claim of

14

disability.  And, as the Commissioner points out, results from at least some of the tests administered to her tend to undermine her claim.  See, e.g., Commissioner's memorandum (document no. 11) at 10 n.12 (noting that the results of claimant's Rheumatoid factor and Antistreptolysin O tests were both negative).  See also Transcript at 187.  Contrary to claimant's suggestion, medical opinions, even those from physicians viewed as treating sources, are not entitled to controlling weight when they are based almost exclusively upon a patient's self-reported symptoms, particularly when there is evidence in the record suggesting that those symptom reports are exaggerated.  See generally 20 C.F.R. § 404.1528 (distinguishing between "symptoms," "signs," and "laboratory findings," and providing that "symptoms are your own description of your physical and mental impairment.  Your statements alone are not enough to establish that there is a physical or mental impairment.").

In light of the record presented, the court concludes that the ALJ adequately discussed his reasons for discounting the opinions of claimant's treating sources and the basis for his

conclusion that those opinions were not supported by substantial evidence in the record.

III. <u>The ALJ's Failure to "Recontact" Claimant's Treating Physicians</u>.

Claimant next assigns error to the ALJ's failure "to recontact Dr. Gorman or Dr. Libbey on an issue reserved to the Commissioner." Claimant's memorandum (document no. 9) at 8. In support of that view, claimant points to SSR 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183 (July 2, 1996), which provides:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner <u>and the adjudicator cannot ascertain the basis of the opinion from the case record</u>, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

<u>Id.</u>, at *6 (emphasis supplied). <u>See also</u> 20 C.F.R. § 404.1527(c)(3).

Here, however, the basis for the opinions rendered by Dr. Libbey and Dr. Gorman was clear: they were based almost entirely upon claimant's own statements about her symptoms. Consequently, there was no need for the ALJ to recontact those sources in an effort to uncover the basis for their opinions; on that point, the record required no clarification. Consequently, the court cannot agree with claimant's assertion that the ALJ erred by failing to recontact her physicians.

IV. The ALJ's Decision to Discount Claimant's Testimony.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain. See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996). When the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit her ability to do basic work activities.

> [W]henever the individual's statements about the
> intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not substantiated
> by objective medical evidence, the adjudicator must
> make a finding on the credibility of the individual's
> statements based on a consideration of the entire case
> record. This includes medical signs and laboratory
> findings, the individual's own statements about the
> symptoms, any statements and other information provided
> by the treating or examining physicians or
> psychologists and other persons about the symptoms and
> how they affect the individual . . ..

> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

SSR 96-7p, Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the

Credibility of an Individual's Statements, 1996 WL 374186 (July

2, 1996). Those factors include the claimant's daily activities;

the location, duration, frequency, and intensity of the

claimant's pain or other symptoms; factors that precipitate and

aggravate the symptoms; the type dosage, effectiveness, and side

effects of any medication the claimant takes (or has taken) to

alleviate pain or other symptoms; and any measures other than

18

medication that the claimant receives (or has received) for relief of pain or other symptoms.  Id.  See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined her and/or reviewed her medical records, and to consider the other relevant factors identified by the regulations and applicable case law.  Part of his credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability."  Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court.  See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

Here, in reaching the conclusion that claimant's testimony concerning the disabling nature of her impairments was not entirely credible, the ALJ considered, among other things, her daily activities (as reported to Dr. Rooney), her ability to care for her son and perform household chores, the fact that claimant sought only intermittent medical care, her failure to carefully follow recommendations that she perform regular exercise, and the nature (and extent) of her social interactions. Additionally, as noted above, there is evidence in the record which suggests that claimant tended to overstate the symptoms of her impairments.

In light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility. To be sure, there is evidence in the record that is supportive of claimant's assertion that she is totally disabled. Importantly, however, there is also substantial evidence in the record to support the ALJ's conclusion that she is not disabled and, instead, is capable of performing a range of sedentary work. In such circumstances - when substantial evidence can be marshaled from the record to support either the claimant's position or the

Commissioner's decision - this court is obligated to affirm the Commissioner's finding of no disability.  See Tsarelka, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Gwathney, 104 F.3d at 1045; Andrews, 53 F.3d at 1039-40.

**Conclusion**

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that the there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision.  The ALJ's decision to discount the opinions of Dr. Libbey and Dr. Gorman with regard to the extent of claimant's disability, as well as his assessment of claimant's credibility, are adequately reasoned and supported by substantial evidence in the record.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied, and the Commissioner's motion to affirm her decision (document no. 11) is

granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 16, 2002

cc:  David F. Bander, Esq.
     Ralph Stein, Esq.
     David L. Broderick, Esq.