Brewster v. SSA                    CV-01-445-M    08/02/02

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Gloria J. Brewster,
      Claimant

      v.                                    Civil No. 01-445-M
                                            Opinion No. 2002 DNH 149
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
      Respondent


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), claimant, Gloria Brewster, moves to reverse the Commissioner's decision denying her applications for Social Security Disability Insurance Benefits and Supplemental Security Income Payments under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423, 1382 (the "Act").  Respondent objects and moves for an order affirming her decision.


**Factual Background**

I.    Procedural History

Claimant filed an application for Supplemental Security Income Payments on January 12, 2000, and an application for Disability Insurance Benefits on February 28, 2000, alleging that

on December 31, 1999, she became disabled due to pain and limitations resulting from fibromyalgia. The Social Security Administration denied her application initially and on reconsideration.

On September 6, 2001, claimant, her attorney, and a vocational expert appeared before an Administrative Law Judge ("ALJ"), who considered her claims de novo. The ALJ issued his order three weeks later, concluding that claimant retained the residual functional capacity to perform light work. Accordingly, he determined that claimant was not precluded from returning to her past relevant work as a receptionist and as a data entry worker, both of which are considered sedentary in nature.

Claimant then filed this action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act. Subsequently, she filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 8). The Commissioner objected and filed a "Motion for an Order Affirming

the Decision of the Commissioner" (document no. 9).  Those

motions are pending.[1]


II.  Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a

comprehensive statement of stipulated facts which, because it is

part of the court's record (document no. 10), need not be

recounted in this opinion.  Those facts relevant to the

disposition of this matter are discussed as appropriate.

---

[1]    The careful reader will observe that claimant did not
seek review by the Appeals Council before initiating this
proceeding.  Ordinarily, then, she would be deemed to have failed
to exhaust available administrative remedies and the court would
lack subject matter jurisdiction over her claims.  See, e.g.,
Sims v. Apfel, 530 U.S. 103, 107 (2000); 20 C.F.R. §§ 404.900 and
416.1400.  However, although neither party has expressly made
this point in its memorandum or the joint statement of material
facts, claimant was selected for a pilot program under which the
Social Security Administration is, in "randomly selected cases,"
testing the "elimination of the request for review by the Appeals
Council."  20 C.F.R. §§ 404.966 and 416.1466.  See also
Transcript at 61 (letter notifying claimant of her selection for
participation in this process).  For claimants participating in
the program, an ALJ's adverse disability determination under
either Title II or Title XVI of the Act can be appealed directly
to federal district court, bypassing the need to seek
intermediate review by the Appeals Council.  20 C.F.R. §§ 404.966
and 416.1466.

3

**Standard of Review**

I.    Properly Supported Factual Findings by the ALJ
      are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health and Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different

---

[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

4

conclusion, so long as it is supported by substantial evidence."). See also Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See

5

<u>Frustaglia v. Secretary of Health and Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health and Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health and Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-

free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals a listed impairment;

(4)    whether the impairment prevents the claimant from performing past relevant work; and

(5)    whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.920.  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

8

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the determination that claimant is not disabled.

**Discussion**

I.  Background - The ALJ's Findings.

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since December 31, 1999, her alleged onset of disability.  Next, the ALJ concluded that the medical evidence of record indicates that the "claimant has fibromyalgia syndrome, an impairment that is severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  Transcript at 12.[3]

---

[3]     According to one source on the subject, "the term 'fibromyalgia' literally means muscle fiber pain.  FM is a chronic disorder that develops gradually and is long-lasting, although it may be punctuated by acutely painful episodes."  6 Attorneys' Textbook of Medicine, para. 25.00 (3d ed. 1999).  That source goes on to provide that, "[t]he picture of FM often includes trouble sleeping deeply, headaches, chest pains,

9

Next, the ALJ assessed claimant's residual functional capacity ("RFC") and concluded that she retained the ability to perform light work.  Id. at 13.  Based upon that determination, the ALJ then concluded that claimant was capable of performing her past relevant work as a receptionist and as a data entry worker, both of which are classified as being "sedentary" in nature.  Consequently, the ALJ held that claimant was not disabled within the meaning of the Act at any time through the date of his decision.

II.  Claimant's "Bilateral Manual Dexterity."

In challenging the ALJ's adverse disability determination, claimant first alleges that, "under the language of 20 C.F.R. Part 404 Appendix 2 to Subpart P, section 201.00(h), . . . a finding of disability should have been 'appropriate' as plaintiff is limited to sedentary work and does not have 'bilateral manual dexterity.'"  Claimant's motion to reverse at 6.  In support of

_____

dizziness, and symptoms of 'irritable bowel.'  There tend to be periods of especially severe pain alternating with times of little or no discomfort.  What FM does not do, despite the long-standing pain, is cause permanent tissue damage or deformity."  Id. at para. 25.01.  See also Aimee E. Bierman, The Medico-Legal Enigma of Fibromyalgia: Social Security Disability Determinations and Subjective Complaints of Pain, 44 Wayne L. Rev. 259, 259 (1998)

that position, claimant points to the Physical Residual Functional Capacity Assessment prepared by Dr. Burton Nault. See Transcript at 239-48. She also relies upon a statement contained in the Consultative Examiner's report of Dr. Christopher Lynch, which provides claimant "cannot use her hands repetitively or strenuously." Claimant's argument, however, suffers from several weaknesses.

First, her reliance upon the Medical Vocational Guidelines, Part 404, Appendix 2 to Subpart P (also known as the "Grid") is misplaced, since those regulations only come into play at step five of the sequential analysis, when an ALJ must determine whether a claimant who cannot perform his or her past relevant work can, nonetheless, perform other work available in the national economy. See 20 C.F.R. Part 404, Subpart P, Appendix 2, section 200.00 (stating that the Grid applies when a claimant "is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work."). See also id. at § 201.00(h), Example 1 (discussing a hypothetical claimant who lacks bilateral manual dexterity and "can no longer do past work"). Here, because the

11

ALJ determined that claimant could perform the exertional requirements of her (sedentary) past relevant work, there was no need to consult the Grid.

Moreover, claimant's selective citations to the record do not support her claim that she lacks bilateral manual dexterity or cannot use her hands repetitively or strenuously. The language quoted from Dr. Lynch's consultative report concerning claimant's inability to "use her hands repetitively or strenuously" is actually nothing more than the doctor's memorialization of claimant's complaints to him. It does not reflect his expert medical opinion of claimant's actual limitations. See Transcript at 236. In fact, Dr. Lynch concluded that, although claimant's fibromyalgia "would presumably interfere with her ability to perform heavy or strenuous activities," it would "not interfere with light sedentary or clerical activities." Id. at 237.

Finally, claimant's reliance on Dr. Nault's report is also misplaced. Dr. Nault's opinion that claimant was "able to lift 10 pounds occasionally and even frequently," transcript at 248,

is not inconsistent with the ALJ's conclusion that she retained the RFC to return to her past relevant work. Additionally, when read in full, it is clear that Dr. Nault was of the opinion that claimant retained, at the very least, the ability to engage in sedentary work of the sort she performed prior to her alleged onset date.

> She should be able to stand, ambulate and sit for at least six hours out of an eight-hour workday with routine breaks in the workplace. She should be able to do occasional bending, lifting, crouching and climbing of stairs. It would appear that the ADL's [i.e., the activities of daily living] support this level of activity. <u>In regard to the claimant's allegations of having limited movement of the hands, this is not supported by any objective findings nor even supported by the claimant's ADL's</u>. Difficulty walking is also not established, due to a constantly known good ambulatory status. Therefore, it would appear that the RFC in the file does adequately address a retained functional capacity at this time, being supported objectively as well as subjectively.

Transcript at 248 (emphasis supplied).

III. <u>Claimant's Lack of Medical Treatment Since 1998</u>.

Next, claimant challenges the ALJ's conclusion that her subjective allegations of disabling pain were not entirely credible. Specifically, she says that the "ALJ stated in his

13

decision that he did not find the Plaintiff credible as 'she has not sought medical treatment since 1998 despite her assertion that she has been disabled by severe pain.'" Claimant's motion to reverse at 6. She then goes on to point out that she "testified at the Hearing that she could not afford medical treatment," id., and cites judicial authority for the proposition that if a claimant "cannot afford the prescribed treatment or medicine, and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." Id. at 7 (citations and internal quotation marks omitted). Claimant concludes by asserting that, "it was improper for the Commissioner to conclude that the claimant is not disabled solely due to a lack of medical treatment." Id. (emphasis supplied).

Importantly, however, the ALJ discounted claimant's testimony based on more than simply the fact that she had not recently sought medical treatment. Among other things, the ALJ observed:

> While the claimant's subjective assertions of disabling pain have been considered, she cannot be accepted as fully credible in this regard. She has not sought medical treatment since 1998 despite her assertion that she has been disabled by severe pain. She does not

14

take pain medication and she remains quite active[,] performing household chores, walking[,] reading, watching television, visiting with friends, caring for her son[,] and working on her computer. Considering the nature of the claimant's symptoms, precipitating and aggravating factors, treatment including medication, the claimant's functional restrictions and her daily activities, the undersigned concludes that the claimant retains the residual functional capacity to perform light work.

Transcript at 13. When the ALJ's observations and conclusions are read in context and in their entirety, it is plain that he did not base his credibility determination "solely" on claimant's failure to seek medical treatment. To the contrary, the record suggests that he considered all relevant factors identified in Avery, supra, and 20 C.F.R. §§ 404.1529 and 416.929. While the record contains some countervailing evidence to which claimant may point, the ALJ's conclusion in that regard is nonetheless supported by substantial evidence in the record.

IV. Social Security Ruling 96-7p.

Finally, in a related argument, claimant asserts that the ALJ "erred in failing to follow Social Security Ruling 96-7p when assessing Claimant's credibility." Claimant's motion to reverse at 7. Specifically, she says, "the ALJ failed to consider the

15

record as a whole in determining that [claimant] was not fully credible." Id. The court disagrees.

Social Security Ruling 96-7p, entitled "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," provides that:

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

1996 WL 374186 (July 2, 1996), at *2-3. Here, the record reveals that the ALJ adequately considered the relevant factors bearing on claimant's credibility and his assessment of her credibility is supported by substantial evidence in the record.

At the hearing before the ALJ, claimant testified that she could not "stand or sit for long periods," transcript at 23, she

16

lacked sufficient dexterity in her fingers to allow her to type, id., she suffers from pain in her hands, legs, knees, feet, neck, and hips, id. at 24, she often lacks sufficient concentration to read or watch 30 minute television shows, and, on one occasion, she "forgot how to get home . . . [and drove] right by [her] exit and [she] just kept on driving." Id. at 36. As noted above, in assessing the credibility of those statements, the ALJ considered, among other things, the fact that claimant "does not take pain medication and she remains quite active performing household chores, walking[,] reading, watching television, visiting with friends, caring for her son[,] and working on her computer." Transcript at 13. Moreover, while the Commissioner concedes that claimant's fibromyalgia causes her some measure of pain and limitation, substantial evidence in the record supports the ALJ's conclusion that her impairment did not cause the degree of pain and limitation that she described.

In the Fall of 1997 (prior to her alleged onset date), claimant reported that her condition was reasonably stable, she exercised regularly, including two hours of bicycling every other day and walking a few miles each day, and that she took only

17

Advil to control her pain (as well as an anti-anxiety medication, Doxepin). Transcript at 218. In March of 1998, claimant underwent her final medical examination prior to her alleged onset date. The examining physician, Dr. Romain, opined that claimant suffered from fibromyalgia, hand pain, right knee pain, and tenderness in her foot. He recommended physical therapy, quadricep hip stretching, icing of her left hip area, and Tylenol Extra Strength as needed for pain in claimant's fingers and knee. Id. at 235. Nothing in Dr. Romain's report suggests, however, that claimant's pain or other effects of fibromyalgia had rendered her totally disabled.

In August of 2000, claimant was examined by Christopher Lynch, M.D. Dr. Lynch noted that there is "clinical evidence to support the diagnosis of fibromyalgia," transcript at 237, but concluded that it would not interfere with "light sedentary or clerical activities." Id. Subsequently, Dr. Burton Nault, a state agency physician, completed a Physical Residual Functional Capacity Assessment of claimant. Dr. Nault concluded that claimant retained the residual functional capacity to perform at least sedentary work. Transcript at 247-48. A second state

18

agency physician reviewed claimant's medical records and agreed with Dr. Nault's conclusions.  Id. at 249-50.

Finally, in assessing claimant's credibility, the ALJ considered the testimony she provided at the hearing.  That testimony was, however, somewhat inconsistent with the "Activities of Daily Living Questionnaire" that claimant completed just a few months earlier.  In that questionnaire, claimant reported, among other things, that she never had any problems concentrating and had no difficulty following written or verbal instructions.  Transcript at 106.  Those responses were not consistent with her testimony at the hearing, where she said her concentration problems prevented her from reading books and often prevented her from watching (and understanding) even a thirty minute television program.  Inconsistencies of that sort certainly lend support to the ALJ's credibility determination. See SSR 96-7p at *4 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

19

While the medical evidence certainly supports the conclusion that claimant suffers from fibromyalgia, there is not sufficient evidence in the record to support claimant's assertion that her pain is so severe that it renders her disabled within the meaning of the Act. And, more importantly, there is substantial evidence in the record to support the ALJ's credibility determination.

## Conclusion

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that the there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision. The ALJ's conclusions regarding claimant's credibility, as well as her residual functional capacity, are adequately reasoned and supported by substantial evidence in the record.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied, and the Commissioner's motion to affirm her decision (document no. 9) is

granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 2, 2002

cc:  David F. Bander, Esq.
     Ralph Stein, Esq.
     David L. Broderick, Esq.